**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMETRIUS MIDDLETON, | : |
| Petitioner, | : Civil Action No. 16-5966 (CCC) |
| v. | : OPINION |
| PATRICK NOGAN, et al., | : |
| Respondents. | : |

**CECCHI, District Judge:**

Petitioner Demetrius Middleton files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging a conviction and sentence imposed by the State of New Jersey for murder. Respondents filed a Response (ECF No. 15) and Petitioner did not file a reply. For the reasons stated below, the Court denies the Petition and denies a certificate of appealability.

                **I.      FACTUAL BACKGROUND**

For the purposes of this Opinion, the Court recites only relevant facts taken from the state appellate court on direct appeal (ECF No. 15-2 at 5–8) and Petitioner's post-conviction relief ("PCR") proceeding (*State v. Middleton*, 2015 WL 10677205, at \*3–4 (N.J. Sup. Ct. App. Div. Apr. 15, 2016)). The story of this case began when Shazam Tahir and his brother, Ashmeer Tahir, obtained two kilograms of cocaine on September 26, 1997 which they decided to sell. Petitioner and his co-defendant Kasib Jones learned of this that same day, and allegedly wanted to rob the Tahirs of their cocaine. Although not entirely clear from the facts in the record, it appears that

Petitioner and Jones, through an intermediary, made arrangements to buy the cocaine from the Tahirs.

On the evening of September 26, 1997, Petitioner and Jones arrived at Shazam's apartment, where the transaction took place. Ashmeer was present along with Hafiz Hosein, the Tahirs' cousin. Petitioner and Shazam then proceeded upstairs inside the apartment while Jones and Hosein waited in the foyer, and Ashmeer stayed on the porch, acting as a lookout. Ten to fifteen minutes later, a gunshot was fired upstairs, and Petitioner ran down the stairs holding a kilogram of cocaine. As Petitioner headed down the stairs, Jones pulled out a handgun, and at point-blank range, shot and killed Hosein. Ashmeer fled with Petitioner giving chase, but was able to escape and called the police. Meanwhile, Shazam was discovered lying dead from a gunshot wound in the kitchen by his wife, who also called the police.

When the police arrived, they discovered both Shazam and Hosein dead from close-range gunshot wounds to their heads. In the kitchen, they found the other kilogram of cocaine. They also recovered two empty shell casings from two separate guns, which evidence suggests both belonged to Petitioner. Based on Ashmeer's testimony, the ballistic reports, and other evidence found during the arrests, the State charged Petitioner with (1) conspiracy to commit robbery, (2) armed robbery, (3) felony murder, (4) knowing and purposeful murder, and (5) related gun charges. Petitioner was tried by a jury, which acquitted him of the conspiracy charge, as well as the robbery and murder charges for Hosein, but hung on the robbery and murder charges for Shazam. The State then dropped the robbery and felony murder charges, and proceeded to retry Petitioner only on the first-degree murder charge for Shazam and the gun charges.

Prior to the second trial, the parties engaged in plea negotiations. At some point, the State made a plea offer, which Petitioner rejected, and countered with a ten-year plea for aggravated manslaughter. Upon learning of the counteroffer, the trial court judge informed the parties that:

> The only way I will take a plea, I am going to have trouble taking a plea, and I have heard all sorts of numbers thrown around, please understand, I don't know whether I have heard the number ten years thrown around, I don't know whether ten years is going to be acceptable to the prosecutor. It is not going to be acceptable to me. Anyone thinks they are going to get a ten-year-sentence in this case is not coming from me and I am the judge in this case, so I want everyone—I don't want people to think things are impossible in this case. I want everyone to deal with whatever is going to happen realistically, as far as I am concerned[.]

*Middleton*, 2015 WL 10677205, at *4. Although negotiations continued, no agreement was reached. Petitioner was tried by a jury in the second trial, who found him guilty of all remaining charges.[1]

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

---

[1] By way of background, the results in the case against Jones were similar, with the jury acquitting him of the charges for Shazam, but hung on the first-degree murder charge for Hosein in the first trial. Jones was found guilty of first-degree murder in the second trial for Hosein's murder. *State v. Jones*, 2009 WL 3430185, at *1 (N.J. Sup. Ct. App. Div. Oct. 6, 2009).

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

### III. DISCUSSION

Petitioner raises five grounds for relief in the Petition: (1) trial counsel provided ineffective assistance by failing to present a plea offer to Petitioner during plea negotiations before the second trial; (2) trial counsel erred when he failed to object, during the second trial, to the admission of evidence that was used during the first trial, related to charges that Petitioner was acquitted of; (3)

trial counsel and appellate counsel were ineffective for failing to object to a witness testifying in restraints; (4) the trial court judge erred by refusing to give a lesser-included offense instruction to the jury; and (5) the trial court judge erred when he allowed the State to read into evidence the testimony of a witness from the first trial, when said witness recanted his testimony during the second trial. The Court addresses each of these grounds below.

### A. Ground One

In this ground, Petitioner asserts that trial counsel provided ineffective assistance when he failed to present a plea offer to him during plea negotiations. The state court rejected this claim, finding:

> [N]othing contained in defendant's petition or the two subsequent letters he penned to PCR counsel demonstrates that a plea offer was made after defendant's counter-offer of ten years was implicitly rejected by the judge. Defendant never mentioned a subsequent plea offer in his first letter; in the second, defendant claimed that a new offer was made, but notably he did not say what it was, or that he would have accepted it at the time, only that in 2007, after serving eight years of his sentence, he was "willing" to accept it. Defendant claimed trial counsel was "reluctant to communicate" with him in light of the judge's comments, but defendant obviously knew what the alleged offer was. In sum, we agree that defendant failed to demonstrate a prima facie IAC claim regarding the plea bargaining process.

*Middleton*, 2015 WL 10677205, at *5.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions

5

of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

The standard for analyzing effectiveness of trial counsel in a plea context is examined under the same *Strickland* two-part test described above. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotation marks omitted). Where counsel's ineffective advice led to a plea offer's rejection, and where the prejudice alleged is having to stand trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012).

The state court's decision was a reasonable application of established federal law, based on a reasonable determination of the facts. Nothing in the record shows that an offer was ever made by the State following the trial court's comments on the plea negotiations. Petitioner alleges that the State contemplated an offer of 12 to 15 years (ECF No. 1 at 25), but contemplation is not an actual offer. Petitioner is simply speculating that an offer must have been made, without any actual evidence to support such contention. Moreover, Petitioner's real complaint seems to be with the trial court judge, who he believes impermissibly interfered with the plea negotiation

through his comments. However, that has no relevance to his ineffective assistance of counsel claim. Additionally, Petitioner may not realize that even if the parties had agreed to a specific plea, such agreement would not be binding on the trial court, and it had the authority to reject the agreement regardless. *State v. A.T.C.*, No. A-4302-15T4, 2018 WL 1865738, at *7 (N.J. Sup. Ct. App. Div. Apr. 19, 2018). As such, the trial court judge's comments were not improper as he was simply informing the parties not to waste time negotiating an agreement he would not accept. Indeed, given the trial court's comments, even if there was a new offer, Petitioner submits no evidence to show that the trial court judge would have accepted an agreement based on the new offer. The state court's holding—that trial counsel was not ineffective for failing to present a plea offer to Petitioner—was reasonable, since there is no evidence that there was one to present beyond the one Petitioner had already rejected, nor any evidence that the trial court judge would have accepted it. Accordingly, relief on this ground is denied.

### B. Ground Two

In this ground, Petitioner claims that trial counsel erred when he failed to object, during the second trial, to the admission of evidence that was used during the first trial. The evidence in question related to charges that Petitioner was acquitted of in the first trial, and he thus claims that the use of this evidence in the second trial violated of the Double Jeopardy Clause of the Constitution. Specifically, Petitioner argues the admission of a witness's testimony (which stated that Petitioner had asked the witness to participate in the robbery prior to going Shazam's apartment) and comments made by both the prosecutor and the trial court judge regarding the robbery, were improper evidence of his intent to rob because that issue had already been decided in the first trial. Although Petitioner asserts that the state court was unreasonable in denying his claim, nothing in the record suggests that this claim was actually raised in state court—indeed,

there is no discussion of Double Jeopardy anywhere in the record. Respondents construe this claim as being the same claim Petitioner had raised on direct appeal regarding prosecutorial misconduct, but neither Petitioner nor the state court had articulated prosecutorial misconduct as a possible Double Jeopardy violation. *See* ECF No 15-2 at 17–18. As such, this claim was unexhausted in state court.

Nevertheless, this Court may deny a claim even when it is unexhausted. 28 U.S.C. §2254(b)(2). The Double Jeopardy Clause "embodies two vitally important interests." *Yeager v. United States*, 557 U.S. 110, 117 (2009). The first is the principle that the state is not permitted to make repeated attempts to convict an individual for the same offense. *Id.* at 117–18. "The first interest is implicated whenever the State seeks a second trial after its first attempt to obtain a conviction results in a mistrial because the jury has failed to reach a verdict. In these circumstances, however, while the defendant has an interest in avoiding multiple trials, the Clause does not prevent the Government from seeking to reprosecute." *Id.* at 118. "The second interest is the preservation of the finality of judgments." *Id.* at 118 (citation and internal quotation marks omitted). The second principle, referred to as the collateral-estoppel component of the Double Jeopardy Clause, "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Id.* at 119. "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment" of acquittal, "that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

However, "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling v. United States*, 493 U.S. 342, 349 (1990). "[T]he collateral-estoppel component

of the Double Jeopardy Clause [does not] exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Id.* at 348. Moreover, the burden is on Petitioner "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Id.* at 351.

Here, counsel's action was within the realm of reasonable professional judgment, as he could have concluded that there was no Double Jeopardy violation. The issue that Petitioner argues was unconstitutionally relitigated in his second trial was whether he intended to rob Shazam when he went to Shazam's apartment. Petitioner's defense to the first-degree murder charge was that he had arrived only to buy the cocaine, and did not have any prior intent to harm or kill Shazam. However, while Petitioner was acquitted of the conspiracy to commit robbery in the first trial, he was *not* acquitted of the substantive robbery charge for Shazam (instead the jury was hung on this charge). To acquit Petitioner of conspiracy, the jury need not have necessarily decided that Petitioner lacked intent to commit robbery; it may have simply concluded that Petitioner did not conspire with anyone in his robbery scheme. "[I]f multiple potential reasons for acquittal are evident in the record of the trial, we will not presume that the jury acquitted on the ground most favorable to the defendant." *United States v. Coughlin*, 610 F.3d 89, 97 (D.C. Cir. 2010). Moreover, although the Court cannot draw any conclusions based on the mistrial, *see Yeager*, 557 U.S. at 122, the Court can rely on another verdict the jury did decide in the same trial: it acquitted Petitioner's codefendant, Jones, of *all* robbery charges. *Jones*, 2009 WL 3430185, at *1. As such, this is not a case where the jury was confused about the difference between the conspiracy charge and the substantive charge. It thus appears that the Jury by acquitting Jones of all robbery charges, but *not acquitting* Petitioner of the substantive charge, did not decide whether Petitioner had the

9

requisite intent to be guilty of the substantive robbery offense—had it decided that Petitioner lacked intent, it would have acquitted him just like it did Jones.

Furthermore, during the second trial, the State did not have to prove, beyond a reasonable doubt, that Petitioner intended to rob Shazam. The element the State had to prove beyond a reasonable doubt was that Petitioner knowingly and purposefully killed Shazam. Petitioner's defense on that element was that he went to Shazam's apartment to buy drugs, and the subsequent killing could have been either an accident or unplanned. The State's use of the evidence to show Petitioner's intent was merely to rebut this defense, and it was not required to prove that Petitioner intended to rob Shazam. There was other evidence of intentional killing, such as the fact that Shazam was shot in the head at point blank range, execution style, using a gun Petitioner brought with him, while he was alone with Shazam. Although the robbery theory presented a plausible motive, the State was not required to *prove* the theory beyond a reasonable doubt; Petitioner was on trial for murder, not robbery. As *Dowling* instructed, such use of the robbery evidence is permissible. *See United States v. El-Mezain*, 664 F.3d 467, 558 (5th Cir. 2011) (finding evidence of alleged criminal act admissible to prove participation in a conspiracy, even though defendant was acquitted of the criminal offense for the act in a prior trial, because the government was not required to prove that he committed the act criminally). In addition, under *Dowling* Petitioner bears the burden to show that the issue he seeks to foreclose in the second trial was actually decided in the first trial, a burden he makes no attempt to satisfy here. *See El-Mezain*, 664 F.3d at 557. As such, the Court finds that Petitioner has not shown that counsel was ineffective for failing to object to the evidence offered to show intent, because the record does not show that the evidence violated the Double Jeopardy Clause.

Even if Petitioner can show deficient performance by his counsel in this regard, he has not shown that he suffered prejudice. As stated above, even excluding the evidence showing Petitioner's intent to rob Shazam, there was other strong evidence of intentional murder. Petitioner has thus not shown there was a reasonable probability that the outcome of his trial would have been different if the evidence of intent to rob had been excluded. Therefore, the Court finds that Petitioner has failed to establish his burden of proof on this claim, and the claim is denied.

**C. Ground Three**

In Ground three, Petitioner asserts that trial counsel was ineffective because he failed to object to a witness who was allowed to testify in restraints, and appellate counsel was ineffective for failing to raise this issue on direct appeal. The state court rejected this claim mostly on state law grounds, finding that the state court decision, *State v. Artwell*, 177 N.J. 526, 534 (2003) (holding that witnesses testifying in shackles and prison garb unduly prejudices a defendant), was decided after Petitioner's 1999 trial, and was not made retroactive on PCR. *Middleton*, 2015 WL 10677205, at *6. It also held that "[t]he argument lacks sufficient merit to warrant discussion." *Id.*

As the New Jersey Supreme Court summarized, although due process forbids allowing a defendant to testify in visible shackles and prison garb without compelling reasons (*see Deck v. Missouri*, 544 U.S. 622, 629 (2005)), there is no United States Supreme Court decision holding that due process is violated when *witnesses* testify in visible shackles and prison garb. *See Artwell*, 177 N.J. at 535; *see also Cornelius v. D'Ilio*, No. 14-1594, 2018 WL 2002788, at *15 (D.N.J. Apr. 30, 2018) ("There is no Supreme Court precedent that supports Petitioner's claim [that witness testifying in restraints and prison garb violated the Constitution]."); *Green v. Warren*, No. 12-6148, 2013 WL 6865420, at *14 (D.N.J. Dec. 20, 2013) ("The Supreme Court, however, has never

11

held that the prohibition on compelling a defendant to wear prison garb applies to witnesses."). Although the New Jersey Supreme Court extended *Deck*'s prohibition to witnesses in *Artwell*, as the state court pointed out, that decision post-dated Petitioner's trial and direct appeal. While it is unclear whether the retroactivity of *Artwell* has any relevance to an ineffective assistance of counsel claim, the state court was nevertheless reasonable in finding that the claim lacked merit because counsel was reasonable for not raising a claim based on a right that did not exist at the time. *See United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015) ("[F]ailing to predict a change in the law is not deficient performance"). As such, the Court finds that the state court decision was a reasonable application of established federal law, based on a reasonable determination of the facts, and relief on this ground is denied.

### D. Ground Four

In this ground, Petitioner alleges that the trial court erred when it failed to give a lesser-included offense instruction to the jury. The state court held that,

> it is clear no rational jury could have found defendant guilty of aggravated manslaughter. There was no evidence at trial of what actually happened in the apartment before defendant shot Shazam. There were no signs of a struggle and no one heard an argument. As the medical examiner explained, there was powder residue around the entrance hole to the wound, demonstrating that it was a contact gunshot wound. A jury could only conclude that defendant understood to a "near certainty" that when he placed the gun against Shazam's head and pulled the trigger that Shazam would die. Defendant did not recklessly fire his weapon killing Shazam; he executed him.

ECF No. 15-2 at 12.

The purpose of a lesser-included offense instruction is to provide the jury with a viable alternative other than conviction or acquittal of the more serious crime, so that "the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck v. Alabama*, 447 U.S. 625, 634 (1980); *see Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988). "This requirement is

based on the risk that a defendant might otherwise be convicted of a crime more serious than that which the jury believes he committed simply because the jury wishes to avoid setting him free." *Vujosevic*, 844 F.2d at 1027. Indeed, under federal law, before a lesser-included offense instruction may be given, most circuits require findings that (1) the elements required to prove the lesser-included offense are a subset of the elements required for the charged crime, and (2) a rational basis exists in the record that would permit the jury to acquit the defendant of the charged crime *and* convict the defendant of the lesser offense. *See United States v. John*, 849 F.3d 912, 920 (10th Cir. 2017); *United States v. Rainbow*, 813 F.3d 1097, 1105 (8th Cir. 2016); *United States v. Nur*, 799 F.3d 155, 159 (1st Cir. 2015); *United States v. Ambriz*, 727 F.3d 378, 381 (5th Cir. 2013); *United States v. LaPointe*, 690 F.3d 434, 439 (6th Cir. 2012); *United State v. Pillado*, 656 F.3d 754, 761 (7th Cir. 2011); *United States v. Crowe*, 563 F.3d 969, 972 (9th Cir. 2009); *United States v. Snype*, 441 F.3d 119, 141 (2d Cir. 2006).

Here, the state court's decision was a reasonable application of established federal law based on a reasonable determination of the facts. While the record is clear that Petitioner vigorously defended that he did not knowingly and purposefully kill Shazam, he offered no evidence to show that he committed a lesser offense. Petitioner's argument appears to be that because he did not have the requisite intent to commit first-degree murder, the trial court should have concluded that he could be guilty of a lesser offense. Petitioner's argument is contrary to established federal law. It is not enough Petitioner presented evidence that he could be innocent of the charged offense—to be entitled to a lesser-included offense instruction, he must also present evidence to show that he can be convicted of the lesser crime. As the state court found, no such evidence exists in the record. Petitioner presented no plausible alternative reason as to why he killed Shazam; he simply argued that he did not do so knowingly and purposefully. That does not

meet the standard required by established federal law for entitlement to a lesser-included offense instruction. Thus, the Court finds the state court's decision to be reasonable, and relief on this ground is denied.

### E. Ground Five

Lastly, Petitioner argues that the trial court erred when it allowed the testimony of Alvin Smothers during the first trial to be read into the record, after Smothers recanted his testimony during the second trial. Although Petitioner raises a direct substantive claim here, this argument was raised as an ineffective assistance of counsel claim in state court. Regardless, the state court found that "[t]he admission of a prior statement that satisfies the conditions of N.J.R.E. 803(a)(1) does not offend the Confrontation Clause[,]" in essence finding that the trial court committed no error. *Middleton*, 2015 WL 10677205, at *6.

The state court's decision was a reasonable application of established federal law based on a reasonable determination of the facts. As the record establishes, Smothers changed his testimony from the first trial to the second trial. N.J.R.E. 803(a)(1) allows admission of "[a] statement previously made by a person who is a witness at a trial or hearing, provided it would have been admissible if made by the declarant while testifying," if the statement "is inconsistent with the witness' testimony at the trial or hearing and is offered in compliance with Rule 613." N.J.R.E. 613 states, "[e]xtrinsic evidence of a prior inconsistent statement made by a witness may in the judge's discretion be excluded unless the witness is afforded an opportunity to explain or deny the statement and the opposing party is afforded an opportunity to interrogate on the statement, or the interests of justice otherwise require." N.J.R.E. 613(b). Similarly, the Federal Rules of Evidence state, "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the

14

witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b).

By finding that the trial court did not err in admitting Smother's prior testimony into the record under N.J.R.E. 803(a)(1), inherent in the appellate court's finding is that the trial court properly followed the procedure under N.J.R.E. 613. Indeed, Petitioner admits that his "attorney voiced an objection, and a Gross hearing was held and the trial court ruled the State could read Smother's entire testimony from the first trial to the jury." ECF No. 1 at 35. In the *Gross* hearing, Petitioner had the opportunity to examine the witness. *See State v. Baldon*, Indictment No. 11-04-0850, 2015 WL 1859129, at *2 (N.J. Sup. Ct. App. Div. Apr. 24, 2015).[2] Under the same circumstances, Smother's prior statement would be admissible even under federal law. *See United States v. Booker*, 375 F. App'x 225, 231 (3d Cir. 2010) ("[P]rior inconsistent statements may be admissible to impeach a witness." (citing Fed. R. Evid. 613(b))); *see also James v. Illinois*, 493 U.S. 307, 325 n.1 (1990) (Kennedy, J., dissenting) ("Rule 613(b) contemplates the admission of extrinsic evidence of a 'prior inconsistent statement.'"). In fact, the admissibility of a prior inconsistent statement offered for impeachment purposes is so engrained in the field of criminal law as to be universally accepted without question. *See Doyle v. Ohio*, 426 U.S. 610, 622 (1976). Accordingly, the Court finds that the state court's decision was reasonable, and relief on this ground is denied. Having denied all claims for relief, the Petition is denied.

### F. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

---

[2] *Gross* hearing refers to the New Jersey Supreme Court's decision in *State v. Gross*, 121 N.J. 1 (1990), which outlined the procedures to be followed before a prior inconsistent statement may be admitted.

2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV.   CONCLUSION

For the reasons set forth above, the Petition is **DENIED**, and the Court **DENIES** a certificate of appealability.

**DATE:** March 15, 2021

CLAIRE C. CECCHI, U.S.D.J.